# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| MONA TROPP, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No.  06 C 414 |
| | ) |
| INGALLS MEMORIAL HOSPITAL, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Plaintiff Mona Tropp's ("Tropp") motion to strike and Defendant Ingalls Memorial Hospital's ("Ingalls") motion for summary judgment. For the reasons stated below, we grant Tropp's motion to strike and grant Ingalls' motion for summary judgment in its entirety.

## BACKGROUND

Tropp is a fifty-five year old former employee of Ingalls, a five hundred and sixty-three bed acute care community hospital, which is located in Harvey, Illinois. Tropp alleges that she was employed with Ingalls from July 8, 1980 to February 14, 2005, when she submitted a letter of resignation. Tropp contends that she was

employed by Ingalls as a Clinical Case Manager ("CCM") from July 1980 through December 2002 and that she "also performed the duties and responsibilities of a registered nurse" ("RN") from December 2002 until February 14, 2005. (A. Compl. Par. 8). Tropp further claims that she "was subject to employment conditions, performance evaluations and assessments, counseling, warnings and discipline which were less favorable that those imposed upon similarly-situated employees under forty," (A. Compl. Par. 6), and that she "was paid unequal and lower pay as compared to males." (A. Compl. Par. 7).

Tropp contends that in 2003, she "received information that she was being paid less than similarly-situated males" and complained to Ingalls of the disparity but that her complaints were not addressed. (A. Compl. Par. 10). Tropp alleges that she again complained of the disparity between her wages and the wages of male counterparts in May 2004 to her supervisor, Catherine Joseph ("Joseph"), and that Joseph did not cure Tropp's concerns but instead Joseph "commenced a course of conduct which harassed and discriminated against" Tropp. (A. Compl. Par. 12). Tropp contends that on July 1, 2004, she "received a warning by . . . Joseph for allegedly not complying with performance standards," (A. Compl. 13), and that when Tropp attempted to discuss the noncompliance issue, Joseph informed Tropp that she was being insubordinate. Tropp further alleges that she "received a written notice of Record of Corrective Action [("RCA")] indicating unsatisfactory work performance" and that the RCA "was based upon false information and therefore was unfounded." (A. Compl. Par. 14). Tropp also contends that on August 2, 2004, she "received a

written communication that she failed to provide sufficient information concerning a patient's discharge instructions" and that when she asked to explain the allegation that "she was refused the opportunity." (A. Compl. Par. 15). According to Tropp, prior to these three disciplinary actions, she "had an impeccable work record at [Ingalls] and was never subject to any discipline and had received excellent and outstanding performance evaluations over the twenty-four . . . years of her employment." (A. Compl. Par. 18).

Tropp also alleges that "[s]imilarly situated younger employees are tardy, slept while on duty, destroyed patient records, were responsible for illegal doctor orders, were responsible for losing patients and also received patient complaints, yet these younger employees received no discipline." (A. Compl. Par. 16). Tropp contends that she complained of the different treatment to Ingalls "through internal grievance process . . . and through communications with the Ingalls' administration" but the issues were not addressed by Ingalls. (A. Compl. Par. 17). According to Tropp, the position of twelve nurses over the age of fifty were eliminated by Ingalls.

Tropp contends that in October 2004, she filed "a charge of discrimination with the Illinois Department of Human Rights" ("IDHR Complaint") (A. Compl. Par. 23), in which she alleged that Ingalls engaged in gender and age discrimination. Tropp alleges that after she filed the IDHR Complaint that Ingalls "retaliated against [Tropp], through the imposition of unequal employment conditions, performance evaluations and assessments, counseling, warnings, discipline, compensation and work hours created an intolerable and hostile work environment," (A. Compl. Par.

24), and that in January 2005, Ingalls reduced her work hours to three and one-half hours per day, three days per week. Tropp contends that as a result of Ingalls' actions that Tropp "was forced to leave her employment with [Ingalls] and [Tropp] was constructively discharged on February 14, 2005." (A. Compl. Par. 27). Tropp contends that in September 2005, she "filed a charge of discrimination and retaliation with the Equal Employment Opportunity Commission" and received a right to sue notice. Tropp then filed the instant action, in which she includes claims of gender discrimination in violation of the Equal Pay Act, 29 U.S.C. § 206(d), ("EPA") (Count I), and EPA retaliation claim (Count II), claims of age discrimination under the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 *et seq.* ("ADEA") (Count III), and an ADEA retaliation claim (Count IV). Ingalls moves for summary judgment on all counts and Tropp moves to strike the deposition of Margaret Griffiths ("Griffiths"), which was partially relied upon by Ingalls.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.

Civ. P. 56(c).  In seeking a grant of summary judgment, the moving party must

identify "those portions of 'the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any,' which it believes demonstrate

the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S.

317, 323 (1986)(quoting Fed. R. Civ. P. 56(c)).  This initial burden may be satisfied

by presenting specific evidence on a particular issue or by pointing out "an absence

of evidence to support the non-moving party's case."  *Id*. at 325.  Once the movant

has met this burden, the non-moving party cannot simply rest on the allegations in

the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set

forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P.

56(e).  A "genuine issue" in the context of a motion for summary judgment is not

simply a "metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co.,

Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Rather, a genuine issue of

material fact exists when "the evidence is such that a reasonable jury could return a

verdict for the non-moving party."  *Anderson v. Liberty Lobby. Inc.*, 477 U.S. 242,

248 (1986).  The court must consider the evidence as a whole, in a light most

favorable to the non-moving party, and draw all reasonable inferences that favor the

non-moving party.  *Anderson*, 477 U.S. at 255.


## DISCUSSION

I.  Motion to Strike Griffiths' Declaration

Tropp moves to strike and bar the declaration of Griffiths, Interim Director of Human Resources and Associate General Counsel of Ingalls, because the declaration relies on documents requested by Tropp in her first set of production requests, which she contends were not produced by Ingalls. Federal Rule of Civil Procedure 26(e) ("Rule 26(e)") states that a party has a duty to amend a prior response when "he knows that the response though correct when made is no longer true and the circumstances are such that a failure to amend the response is in substance a knowing concealment." Fed. R. Civ. P. 26(e)(2)(B). In addition, Rule 26(e) states that determining the existence of the duty to amend a previous answer is within the sound discretion of the district court. *See, e.g., Phil Crowley Steel Corp. v. Macomber, Inc.*, 601 F.2d 342, 344 (8th Cir. 1979)(stating that duty to amend is a discretionary decision to be made by the district court).

Tropp argues that paragraphs three, forty-four, forty-six, and forty-seven of Griffiths' declaration should be stricken and barred from Ingalls' statement of material facts pursuant to Local Rule 56.1 because Ingalls did not supply the requested information. Tropp alleges that she requested certain documents in production request number 10, which asked for "[a]ll documents that contain, refer, or relate to list(s) of all job titles and job duties of [Ingalls'] employees." (Mot. to Strike Par. 7). In response to the production request, Tropp contends that Ingalls claimed that the request was "overly broad, unduly burdensome, and not reasonably calculated to the discovery of admissible evidence. . . ." (Mot. to Strike Par. 8). According to Tropp, Ingalls did provide job descriptions for positions including

"Staff Nurse/Registered Nurse, Clinical Case Manager, Behavioral Health Social Worker/Professional Counselor, Intake Counselor, Mental Health Counselor, and Certified Occupational Therapist Assistant." (Mot. to Strike Par. 8). Tropp argues that she will be prejudiced if Ingalls is "allowed to object to the production of documents on the basis of irrelevancy, but then when it served [Ingalls'] purposes, introduce and rely upon the documents that were not produced." (Mot. to Strike Par. 9).

Ingalls had a duty to supplement its previous answer and was required to turn over information relating to Ingalls' job titles and descriptions that were utilized by Griffiths in her declaration. Specifically, Ingalls should have supplemented its previous answer with the material now contained in Griffiths' declaration included in exhibits A, B, C, and D, all of which contain information on job titles and descriptions. Ingalls' duty arose when it made the strategic decision to use the job titles and descriptions to support the instant motion for summary judgment. Therefore, we grant Tropp's motion to strike and bar paragraphs three, forty-four, forty-six, and forty-seven of Griffiths' declaration insofar as those paragraphs relate to job titles and descriptions previously requested by Tropp. The stricken material is not considered in our decision below.


## II. Unequal Pay Claim (Count I)

Tropp claims that she can establish that Ingalls violated the EPA "when it refused to acknowledge the fact that [Tropp] was performing RN duties and

responsibilities, and would not pay her commensurate to other male BHS Department employees performing the same work." (Opp. 6). In order to establish a *prima facie* case under an EPA claim, Tropp must show that: "(1) higher wages were paid to a male employee, (2) for equal work requiring substantially similar skill, effort and responsibilities, and (3) the work was performed under similar working conditions." *Stopka v. Alliance of Am. Insurers*, 141 F.3d 681, 685 (7th Cir. 1998). If Tropp establishes a *prima facie* case, the burden then shifts to Ingalls to establish one of four statutory defenses. *Cullen v. Ind. Univ. Bd. of Trustees*, 338 F.3d 693, 702 (7th Cir. 2003). Ingalls argues that Tropp is unable to establish a *prima facie* case and that, in the alternative, "the undisputed facts reveal that any pay differential was based on factors other than sex." (Mot. 3).

A. Compensation of Male RNs

Tropp argues that a male RN counterpart working within the BHS Department, Romeo Vida ("Vida"), received higher wages from Ingalls than did Tropp, who was paid as a CCM. Tropp points to Vida and contends that RNs earned approximately $30 per hour while Tropp earned approximately $20 per hour. Other than her general and unsubstantiated statement regarding RN salaries, Tropp has failed to point to any evidence in the record regarding the amount Vida actually earned. This conclusory statement is insufficient to establish that higher wages were

8

paid to male counterparts.  *See Abioye v. Sundstrand Corp.*,164 F.3d 364, 368 (7th Cir. 1998)(stating that conjecture or speculation cannot defeat a summary judgment motion); *see also Celotex Corp.*, 477 U.S. at 325 (stating that the burden of the moving party may be discharged by showing the court the non-movant's lack of support for its case).  Thus, based on the undisputed evidence, no reasonable jury could find that Tropp has met the first prong in establishing a *prima facie* case under the EPA.

### B.  Substantially Similar Skill, Effort and Responsibilities

Tropp argues that she performed work as an RN that required similar effort, skill and responsibility to jobs held by male RNs.  In determining whether two jobs are similar, courts look to whether the jobs in question have a "common core" of tasks and whether there is anything additional that makes the jobs distinctly different. *Cullen*, 338 F.3d at 698.  In evaluating job duties, "each of the elements listed in the EPA (skill, effort and responsibilities) must be met individually to establish a prima facie case."  *Id.*; *see also* 29 C.F.R. § 1620.14.

It is undisputed that Tropp is a licensed RN and that all RNs have a base level of skill required to maintain their license.  Tropp's RN duties included paperwork and communicating with doctors, family members, and patients, which were all responsibilities that could only be performed by RNs.  However, Tropp also admits that she "did not have strong clinical skills, adequate experience, and current qualifications" to be on par with other RNs working in the hospital.  In addition,

Tropp's duties as a CCM were to lead group therapy sessions and create treatment plans for those patients. (D SOF Par. 28). Tropp's duties as a CCM are not comparable to those of the RNs, even if Tropp performed some duties of an RN. For example, Tropp did not administer medication to patients or provide bed-side patient care, as the RN duties required. (D SOF Par. 38, 43). Also, Tropp has failed to point to evidence that states Vida's job qualifications, skills, and his day-to-day responsibilities other than the general RN job classification and, as such, she is unable to illustrate how she performed work equal to that of Vida. *See Cullen*, 338 F.3d at 698 (stating that when determining the equality of job duties, each individual element must be met to establish a prima facie case). Further, although RNs in the inpatient units were required to work on weekends, Tropp did not work on weekends, which she considered to be one of the benefits of her job. (D SOF Par. 30). Finally, although supervisors may have labeled Tropp as an "RN/CCM," (P SOF Par. 26); (P Resp. D SOF Par. 11, 13), we look to "the actual job duties performed by each employee, not to his or her job description or title." *Dey v. Colt Constr. & Dev. Co.*, 28 F.3d 1446, 1461 (7th Cir. 1994); *see also* 29 C.F.R. § 1620.17(a) (stating that "[r]esponsibility is concerned with the degree of accountability required in the performance of the job, with emphasis on the importance of the job obligation"). Thus, based on the undisputed evidence, no reasonable jury could find that Tropp had similar skills to her alleged counterpart RNs. *See Stopka*, 141 F.3d at 685 (holding that the plaintiff's duties were limited

since she did not have the skills to perform one of the duties that her male counterparts were given and because she had never performed the duty).

### C.  Substantially Similar Working Conditions

Tropp argues that her working conditions were substantially similar to the conditions of male RNs working in the inpatient unit of the BHS Department.  For example, Tropp conducted group and individual counseling sessions for patients in the same manner that male RNs did in the inpatient unit.  In addition, the supervisory structure was also the same, and although Tropp reported directly to Joseph, she also reported to the Nurse Supervisor, Margaret Chodl, for performance relating to her limited RN duties.  However, as the Seventh Circuit has stated, jobs must be performed under "substantially similar working conditions."  *Cullen*, 338 F.3d at 698.

Ingalls argues that the working conditions in the Psych inpatient unit and the Chemical Dependency outpatient unit were not similar.  In the instant matter, Tropp's duties did not require her to dispense medication to patients or provide bed-side patient care, whereas the RNs in the inpatient unit were required to perform such duties.  Such differences between Tropp's duties and those of the RNs in the inpatient unit show that Tropp was not required to perform under hazardous work conditions.  In addition, as noted earlier, Tropp was not required to work weekends as a CCM, whereas RNs were required to work on those days.  Therefore, no reasonable jury could conclude that Tropp's working conditions were substantially

similar to the working conditions of male RNs in the inpatient unit of the BHS Department.

## D.  Statutory Affirmative Defenses

Even if Tropp were able to establish a *prima facie* case that Ingalls violated the EPA, Ingalls is able to establish one of four statutory defenses.  These defenses occur when pay rate "is determined pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any factor other than sex." *Merillat v. Metal Spinners, Inc.*, 470 F.3d 685, 697 (7th Cir. 2006)(quoting 29 U.S.C. § 206(d)(1)).  The Seventh Circuit has stated that "a differential based on any factor other than sex" is "a broad 'catch-all' exception and embraces an almost limitless number of factors, so long as they do not involve sex. *Falcon v. State of Ill.*, 882 F.2d 1206, 1211 (1989)(internal citations omitted).  Since the court should not "second-guess the employer's business judgment, [the court] ask[s] only whether the factor is bona fide, whether it has been discriminatorily applied, and in some circumstances, whether it may have a discriminatory effect." *Id.* at 1211.  Based on the undisputed facts, Ingalls is able to show that the rate of pay was determined pursuant to a differential based on a factor other than sex.

In the instant action, Ingalls' decision to pay Tropp a different rate was not based on sex.  Ingalls had legitimate reasoning to pay Tropp based on a CCM scale rather than on an RN scale.  Although Tropp performed limited RN duties, the vast

majority of her work was as a CCM. Moreover, ninety-four percent of RNs were female and Tropp testified that she did not have any evidence that male RNs earned more than women RNs. Further, RNs were required to work a different work schedule, including weekends. Tropp, who was employed as a CCM, did not work on weekends. Finally, Tropp's duties as a CCM required less hazardous activities than that of RNs. Thus, based on the undisputed facts, no reasonable jury could find other than that Tropp's wage was "determined pursuant to . . . a differential based on . . . factor[s] other than sex." *Merillat*, 470 F.3d at 697.

In considering the record as a whole, in a light most favorable to Tropp, and drawing all reasonable inferences that favor her, there is no genuine issue of material fact concerning her EPA claim and no reasonable jury could find that Tropp established a *prima facie* case under the EPA. In addition, no reasonable jury could find other than that Tropp's wage was "determined pursuant to . . . a differential based on any factor other than sex." *Id.* Therefore, based on the above, we grant Ingalls' motion for summary judgment on the EPA claim (Count I).

III.  Age Discrimination Claim (Count III)

Tropp claims that Ingalls' "age based disparate treatment of [Tropp] as compared to similarly-situated younger employees constituted unlawful discrimination on the basis of age with respect to terms and conditions of employment in violation of the ADEA" because Tropp's work hours were reduced and she was constructively discharged. (A. Compl. Par. 28).  The ADEA prohibits

employers from discriminating against employees because of their age. 29 U.S.C. § 623(a). Specifically, the ADEA provides that "it shall be unlawful for an employer . . . to fail to hire or discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privilege of employment, because of such individual's age. . . ." 29 U.S.C. § 623 (a)(1). For an employee to defeat a motion for summary judgment on an ADEA claim, the employee may use the direct or indirect method of proof. *Schuster v. Lucent Technologies, Inc.*, 327 F.3d 569, 573 (7th Cir. 2003). A plaintiff bringing an ADEA claim can also succeed by showing a "pattern or practice" of age discrimination by the defendant. *See Adams v. Ameritech Servs., Inc.*, 231 F.3d 414, 422 (7th Cir. 2000). Tropp claims that she can prevail under both the direct and indirect approach.

A. Direct Method of Proof

To prevail using the direct method of proof, a plaintiff must "essentially [show] an admission by the decision-maker that his actions were based on the prohibited animus." *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 616 (7th Cir. 2000). Given that such direct statements are rare "in today's politically correct workplace environment," a plaintiff can also satisfy the direct method showing a "'convincing mosaic' of circumstantial evidence that 'allows a jury to infer intentional discrimination by the decision-maker.'" *Jordan v. City of Gary, Ind.*, 396 F.3d 825, 832 (7th Cir. 2005)(citing *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498,

504 (7th Cir. 2004)).  This circumstantial evidence, however, must directly show that there was a "discriminatory reason [behind] the employers' action."  *Id.*

In the instant action, Tropp does not allege that any admissions were made by decision makers at Ingalls, but Tropp does point to circumstantial evidence in support of her opposition to Ingalls' motion for summary judgment.  Tropp contends that Marsha Kortum ("Kortum"), a supervising nurse, informed Tropp of a conversation between Kortum and Joseph in which Joseph suggested "getting rid of nurses."  (P. SOF Par. 4); (D SOF Par. 2).  According to Kortum, all of the nurses that Joseph suggested "getting rid of" were over over the age of forty-five.  (P. SOF Par. 4); (D SOF Par. 2).  In addition, Tropp claims that Kim Dennison ("Dennison") was informed by Joseph the need to remove older nurses and replace the nurses with younger nurses.  Finally, Tropp contends that she "witnessed a series of resignations and terminations of nurses over" the age of forty.  (Opp. 3); (P SOF Par. 1-3).

The Seventh Circuit has identified three types of evidence that can be sufficient proof to survive a motion for summary judgment under the circumstantial evidence method:  "(1) suspicious timing, ambiguous statements, and behavior toward or comments directed at other employees in the protected group; (2) evidence that employees similarly-situated to the plaintiff but outside the protected class received systematically better treatment; or (3) evidence that the plaintiff was qualified for a job in question, but passed over in favor of (or replaced by) a person not having the forbidden characteristic and that the employer's stated reason for the difference in treatment is unworthy of belief, a mere pretext for discrimination."

*Ulmer v. Elkhart County*, 2005 WL 1910909, at *7 (N.D. Ind. 2005)(citing *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 737 (7th Cir.1994)).

Tropp claims that the statements made by coworkers constitute circumstantial evidence that enables Tropp to withstand summary judgment. First, Tropp contends that "Kortum . . . told her of a conversation between . . . Joseph and [Kortum] regarding 'getting rid of nurses'" over the age of forty-five. (Opp. 3). The undisputed evidence, however, does not support this contention. Tropp argues that "Joseph identified nurses that she wanted to get rid of – all of them were over forty-five years old." (Opp. 3). The undisputed evidence, however, does not support this contention. Kortum stated that "Joseph and [Kortum] looked at a document containing names of nurses in the department and . . . Joseph named off nurses that she wanted cut from the department." (Kortum Decl. Par. 1-2). Kortum further stated that "[i]t occurred to [her] at the time that the nurses that . . . Joseph named for termination were over forty-five yours [sic] old." (Kortum Decl. Par. 1-2). This generalized statement is not sufficient to survive summary judgment since it lacks in both foundation and relevance. For example, Kortum did not identify the names and ages of the nurses over the age of forty-five that Joseph allegedly wished to terminate. In addition, Kortum did not provide a basis for her knowledge that each of the nurses identified by Joseph were over the age of forty-five. Kortum does not state that Joseph told her that nurses who were over forty-five years old should be terminated. Kortum merely states that Joseph named certain nurses for termination and that it "occurred" to Kortum that those nurses were over forty-five. (Kortum

Decl. Par. 1-2). Kortum does not suggest that Joseph implied that Kortum should terminate the position of all workers over the age of forty-five. Finally, Tropp does not have knowledge, nor has she presented evidence, that Joseph's alleged statement to Kortum was intended as a statement regarding workers over the age of forty-five, rather than all workers. (Tropp Dep. 126, 9-16); *see Celotex Corp.*, 477 U.S. at 325 (stating that the burden of the moving party may be discharged by showing the court the non-movant's lack of support for its case). Therefore, no reasonable jury could find that Kortum's testimony was nothing more than an observation of workers on a list, or that such statements constitute "ambiguous statements, and behavior toward or comments directed at other employees in the protected group . . . ." *Ulmer*, 2005 WL 1910909, at *7.

Ingalls further argues that the testimony offered by Tropp regarding the statements made by Kortum to Tropp are inadmissible hearsay. Federal Rule of Evidence 801(c) states that "'[h]earsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). Tropp contends that she "testified [at her deposition] that . . . Kortum . . . told her of a conversation between . . . Joseph and [Kortum] regarding 'getting rid of nurses.'" (Opp. 3). This statement was offered by Tropp during her deposition, rather than the declarant, Kortum. Additionally, the statement related by Tropp in her deposition was one that was offered in order to prove that Joseph wanted to "get[] rid of nurses" under the age of forty-five. Such a declaration by Tropp in inadmissible hearsay and, thus, Tropp

17

may not rely upon it.

Tropp also presents statements by Dennison in opposition to Ingalls' motion for summary judgment. According to Tropp, "Dennison was told by Joseph on *more than one* occasion that [Joseph] wanted to get rid of older nurses." (Opp. 3). Ingalls argues that comments by Dennison regarding Joseph's wishes to terminate older nurses are too remote since the comments were made "two years before any of the specific actions of which Tropp complains occurred." (Reply 7). The Seventh Circuit has stated, "[a]lleged discriminatory remarks qualify as direct evidence if they are 'related to the employment decision in question.'" *Oest v. Ill. Dep't of Corrs.*, 240 F.3d 605, 611 (7th Cir. 2001)(citing *Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1089 (7th Cir. 2000)). In order to be "related to the employment decision in question" the discriminatory remarks must be within the "temporal proximity" of the alleged action. *Robin*, 200 F.3d at 1089. An excessive period between the allegedly discriminatory remark and the employment decision will defeat the inference of a "causal nexus between the remark and decision to discharge." *Geier v. Medtronic, Inc.*, 99 F.3d 238, 242 (7th Cir. 1996)(finding that evidence of ill intent that occurred one year prior to the employment decision should be discounted). As such, remarks that are not "contemporaneous with the discharge or causally related to the discharge decision making process," are insufficient to create a triable issue of material fact regarding discrimination. *Id.* In the instant action, the comments by Dennison were made in 2002, approximately two years prior to the time that Tropp's work hours were reduced. *See Robin*, 200 F.3d at 1089 (finding that derogatory

remarks about the plaintiff's age that were made two years before his discharge could not be considered direct evidence of discrimination); *Geier*, 99 F.3d at 242 (finding that evidence of ill intent that occurred one year prior to the employment decision should be discounted); *Oest*, 240 F.3d at 611 (finding that alleged discriminatory statements made two years prior to the plaintiff's suspension and four years prior to the plaintiff being let go did not create a causal connection between the statements and employment decision). Therefore, no reasonable jury could find that such comments allegedly made by Joseph two years prior to the alleged reduction in Tropp's work hours are sufficient to show a causal relationship between the alleged statements and the employment decision by Ingalls.

Finally, Tropp contends that "over a period of time starting when Joseph became director of the BHS Department, Tropp witnessed a series of resignations and terminations of nurses" over the age of forty. Tropp argues that such circumstantial evidence supports a direct inference of age discrimination. (Opp. 3). However, Tropp has failed to point to specific facts that establish such evidence. First, Tropp has failed to point to evidence that establishes that she had personal knowledge or an independent basis to state that Joseph unjustifiably took action against older employees. Second, Tropp has not pointed to evidence to support her claim that she had personal knowledge about any alleged discriminatory conduct toward employees over forty years of age by Joseph. Third, Tropp has failed to point to any evidence to suggest that she was in a leadership, supervisory, or reviewing relationship with any of the alleged older employees in order to determine whether

any employees were meeting the requirements of their jobs.  Finally, Tropp did not point to any evidence in the record that shows that she personally witnessed Joseph acting in a hostile manner toward the alleged older employees.  As such, the conclusory statements by Tropp are insufficient to defeat Ingalls' motion for summary judgment and no reasonable jury could find that Tropp has shown "an admission by the decision-maker that his actions were based on the prohibited animus." *Radue*, 219 F.3d at 616, or that a "'convincing mosaic' of circumstantial evidence," *Jordan*, 396 F.3d at 832, infers intentional discrimination by Ingalls.  *See also Celotex Corp.*, 477 U.S. at 325 (stating that the burden of the moving party may be discharged by showing the court the non-movant's lack of support for its case).

### B.  Indirect Method of Proof

To prevail under the indirect approach, a plaintiff must first establish a *prima facie* case of age discrimination by showing that:  "(1) [s]he was a member of a protected class; (2) [s]he was meeting h[er] employer's legitimate job expectations; (3) [s]he suffered an adverse employment action; and (4) similarly-situated employees not in the protected class were treated more favorably." *Olson v. Northern FS, Inc.*, 387 F.3d 632, 635 (7th Cir. 2004).  If the plaintiff is able to meet this burden, then "the burden shifts to the employer to produce a legitimate, nondiscriminatory reason for its adverse employment decision." *Gusewelle v. City of Wood River*, 374 F.3d 569, 574 (7th Cir. 2004).  If the employer is able to do this, the

burden shifts "back to the employee to present evidence sufficient to enable a fact finder to find that the employer's explanation is pretextual." *Id*.

### 1.  Protected Class and Employer's Legitimate Job Expectations

In the instant action, Tropp clearly meets prongs one and two of the above test. Tropp was over the age of forty when the alleged actions took place.  In addition, Tropp received performance reviews in 2002, 2003, and in January and December of 2004, all of which rated Tropp's work performance as either "meets" or "exceeds" expectations in all categories.  (P SOF Par. 26); (D SOF Par. 48-51).  Therefore, Tropp has met the first two prongs under the indirect method.

### 2.  Adverse Employment Action

Ingalls argues that Tropp did not suffer an adverse employment action.  Tropp contends that she suffered adverse employment actions when her work hours were reduced due to the declining patient census in the Chemical Dependency outpatient program and when she received reprimands.  In the instant action, Tropp suffered an adverse employment action when her hours were reduced in July 2004, which remained that way until she resigned in February 2005.  The reduction in her hours caused a reduction in her pension, paid sick days, and paid vacation days.  However, as to the reprimands that she received from her supervisors, such discretionary employer reprimands are insufficient to support a disparate impact claim pursuant to the ADEA.  *See Hoffman-Dombrowski v. Arlington Int'l Racecourse, Inc.*, 254 F.3d

644, 654 (7th Cir. 2001)(noting that warnings are not adverse actions for a discrimination or retaliation claim).

Tropp also contends that she suffered adverse employment actions when she was constructively discharged.  In order to show that she was constructively discharged, Tropp must demonstrate "that she was forced to resign because her working conditions, from the standpoint of the reasonable employee, had become unbearable."  *EEOC v. University of Chicago Hosps.*, 276 F.3d 326, 331 (7th Cir. 2002).  In addition, Tropp is required to show a discriminatory work environment "even more egregious than the high standard for hostile work environment."  *Tutman v. WBBM-TV, Inc.*, 209 F.3d 1044, 1050 (7th Cir. 2000).  Furthermore, Tropp must show that the constructive discharge was motivated by age discrimination.  *EEOC*, 275 F.3d at 333.  In the instant action, Tropp has pointed to her reduction in work hours, which was caused by the reduction in patients in the Chemical Dependency outpatient program, as evidence of her constructive discharge.  (Tropp Dep. 96); (P Resp. D SOF Par. 17).  In addition, Tropp points to three separate reprimands by her supervisors as evidence that she was constructively discharged.  However, Tropp does not point to any "unbearable" work conditions that would amount to the type of employment conditions that would force her to resign.  *EEOC*, 276 F.3d at 331; *see, e.g., Tutman*, 209 F.3d at 1050 (finding that an employee who was subjected to repeated racist taunting and threats was constructively discharged); *see also Brooms v. Regal Tube Co.,* 881 F.2d 412, 417 (7th Cir. 1989)(finding that an employee was

constructively discharged when a supervisor showed the employee racist pornographic photos and threatened to kill her).

Tropp also argues that she would have been discharged at some point in the future, which she claims is evidence of her constructive discharge. In addition to the standard stated above, constructive discharge of an employee can occur if an "employer acts in a manner so as to have communicated to a reasonable employee that she will be terminated, and the plaintiff employee resigns. . . ." *Eeoc*, 276 F.3d at 332; *see generally Bragg v. Navistar Int'l Transp. Corp.*, 164 F.3d 373, 377 (7th Cir. 1998)(finding that "[c]onstructive discharge exists to give Title VII protection to a plaintiff who decides to quit rather than wait around to be fired"); *cf. Hunt v. City of Markham, Ill.*, 219 F.3d 649, 655 (7th Cir. 2000)(stating that "[a] person who is told repeatedly that he is not wanted, has no future, and can't count on ever getting another raise would not be acting unreasonably if he decided that to remain with this employer would necessarily be inconsistent with even a minimal sense of self-respect, and therefore intolerable"); *Henn v. Nat'l Geographic Soc'y*, 819 F.2d 824, 829-30 (7th Cir. 1987). Tropp points to her three reprimands by supervisors and her reduced work hours as evidence that she was constructively discharged. Tropp also argues that "[t]he fact that Joseph responded 'No' on the change of status form in response to 'rehire consideration' and wrote, 'Long standing history of work performance and behavioral difficulties,' suggests that had Tropp not resigned" that Tropp would have been fired. (Opp. 5). However, such evidence does not show that had Tropp not quit her job that she would have been terminated in the future.

Additionally, Tropp admits in her deposition that there "wasn't a lot of work to do" due to the low patient census in June 2004 and that neither her nor David Banks ("Banks") were working full-time during the pay period. (Tropp Dep. 96); (P Resp. D SOF Par. 17). Such evidence establishes Tropp did not fear that she would be terminated, but rather that her hours would be diminished even more if the patient census did not rise. Further, even though Joseph responded that she would not consider rehiring Tropp, we must view the objective belief of Tropp at the time prior to her resignation and not the subjective beliefs of Tropp due to Joseph's view that she would not consider rehiring Tropp if a future vacancy existed. Tropp has provided no evidence that Joseph informed Tropp that she would be fired, that Tropp had a "[l]ong standing history of work performance and behavioral difficulties," (Opp. 5), or that Tropp was privy to Joseph's beliefs or to Tropp's own personnel file. Finally, Tropp has shown no evidence that the allegedly adverse actions were due to her age, rather than to the reduced patient total or employer discretionary disciplinary actions. Therefore, no reasonable jury could find that Tropp was subjected to adverse employment actions, other than by a reduction in work hours, which was caused by the reduced number of patients.


### 3. Similarly-Situated Employees

Ingalls argues that Tropp has not pointed to similarly-situated employees outside the protected class who were treated more favorably than Tropp. A

similarly-situated employee is one who is "directly comparable to [the plaintiff] in all material respects." *Ajayi v. Aramark Business Services, Inc.*, 336 F.3d 520, 531-32 (7th Cir. 2003)(stating that "to evaluate whether two employees are directly comparable, we consider all of the relevant factors, which most often include whether the employees (I) held the same job description, (ii) were subject to the same standards, (iii) were subordinate to the same supervisor, and (iv) had comparable experience, education, and other qualifications-provided the employer considered the latter factors in making the personnel decision"); *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 330 (7th Cir. 2002)(stating that employees are generally similarly-situated if "'the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them'")(quoting *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617-18 (7th Cir. 2000)).  As the Seventh Circuit has stated, "[a]bove all, we are mindful that courts do not sit as super personnel departments, second-guessing an employer's facially legitimate business decisions." *Ajayi*, 336 F.3d at 532.

Tropp claims that she was treated less favorably than similarly-situated employees outside of the protected class when "she was subjected to substantial reduction in work hours, but not afforded any opportunities to assume duties that she was qualified for within other areas of the Department." (Opp. 5).  Tropp argues that Sue Greis ("Greis") and Lisa (whose last name is unknown to Tropp) ("Lisa"), (Opp. 5), were similarly-situated employees under the age of forty who where given

opportunities to work additional hours in other areas where each was qualified. However, neither Greis nor Lisa were CCMs. Just because an employee that Tropp refers to as Lisa may have run group therapy sessions at time like Tropp, does not mean that such an individual performed the same duties as Tropp. Similarly, just because Greis allegedly was allowed to work additional hours as an RN does not mean that Greis performed the same duties as Tropp. Greis and Lisa were not CCMs such as Tropp, and neither regularly performed the same work as Tropp. *See Raymond v. Ameritech Corp.*, 442 F.3d 600, 610 (7th Cir. 2006)(noting that employees are similarly-situated if they are directly comparable in all material respects); *Ajayi*, 336 F.3d at 531-32 (stating standard). In addition, even if Tropp was allowed to obtain additional hours before Joseph was Tropp's supervisor but not allowed to obtain additional work hours after Joseph became Tropp's supervisor, Tropp has not pointed to any evidence in the record to show that either Greis or Lisa had their hours reduced and were subsequently allowed to work additional hours. *See Celotex Corp.*, 477 U.S. at 325 (stating that the burden of the moving party may be discharged by showing the court the non-movant's lack of support for its case). Finally, Tropp has not shown that Greis or Lisa are less than forty years old and thus outside the protected class for her ADEA claim, 29 U.S.C. § 631, nor has Tropp shown that Greis or Lisa are similarly-situated to Tropp in regard to factors such as their job descriptions, qualifications, and supervisors. Tropp is required to specifically identify the similarly-situated employee or employees in order to satisfy one of the requirements for her *prima facie* case. *Peele*, 288 F.3d at 330-31. Tropp's

failure to meet this burden forecloses her ability to prevail on her ADEA claim. *Id.* (stating that if "a plaintiff has failed to identify a similarly-situated co-worker outside of his protected class, or [show] that the co-worker identified by the plaintiff, while similarly-situated, was not treated in a more favorable manner," the plaintiff's "failure to offer such 'comparables' dooms his . . . claims"). Based on the above, no reasonable jury could find that Tropp has established that similarly-situated employees outside the protected classes were treated more favorably than Tropp.

### 4. Pretext for Age Discrimination

Ingalls argues that Tropp's hours were reduced in July 2004 due to the declining patient census in the Chemical Dependency outpatient program, which is a legitimate non-discriminatory reason for the adverse employment action. Once Ingalls has established a legitimate and nondiscriminatory reason for the reduction in Tropp's hours, the burden then shifts back to Tropp to "demonstrate that the proffered explanation is merely a pretext" for Ingalls trying to displace Tropp due to her age. *Ajayi,* 336 F.3d at 533-534. Tropp's obligation to show pretext requires her to show that Ingalls offered a "phony reason for some action." *Green v. National Steel Corp.*, 197 F.3d 894, 899 (7th Cir. 1999); *Russell v. Acme-Evans Co.*, 51 F.3d 64, 68 (7th Cir. 1995). Under this standard, "[o]ur only task is to determine whether [defendant] 'honestly believed in the nondiscriminatory reasons it offered, even if the reasons are foolish or trivial or even baseless.'" *See Merillat*, 470 F.3d at 693 (determining relevancy for information relating to a pretextual discriminatory

reasons); *see also O'Connor v. DePaul University*, 123 F.3d 665, 670 (7th Cir. 1997)(stating that "[f]or purposes of the ADEA, [the court] may not be concerned with whether the decision was right or wrong, fair or unfair, well-considered or precipitous" and that the court "must look only at whether the reason was discriminatory or, in the pretext analysis, whether it actually did underlie the plaintiff's termination").

Tropp has not demonstrated that Ingalls' reason is phony or completely lacking in a factual basis. Tropp points to conversations between Joseph and Kortum and between Joseph and Dennison as evidence that the reduction in Tropp's work hours was based on her age. However, these conversations took place well in advance of, and were not related to, Tropp's reduction in hours. Such isolated comments, even if they were made, do not show that Ingalls' decision to reduce Tropp's work hours was motivated by discriminatory intent since the comments were not made around the time and in reference to the actual adverse employment action. *See Merillat*, 470 F.3d at 694 (discussing how the removal of a cartoon from a bulletin board that highlighted the differences between male and female salaries was insufficient to show animus). In addition, Tropp admits in her deposition that there "wasn't a lot of work to do" due to the low patient census in June 2004 and that neither her nor Banks were working full time during the pay period. (Tropp Dep. 96); (P Resp. D SOF Par. 17).

Tropp also argues that "disciplinary actions, counselings [sic], [and] increased workload" were "trumped up charges, created by [Joseph] knowing that [Joseph's]

position of authority would support her unjust actions." (Opp. 13). However, Tropp points to no evidence to show that the disciplinary actions, counseling, and increased work load were unfounded, other than to dispute the facts underlying those actions and disagree with the actions taken against her. Tropp's disagreement with the actions is insufficient to establish that the charges against her were "trumped up." *See Forrester v. Rauland-Borg Corp.*, 453 F.3d 416, 417 (7th Cir. 2006)(finding that the plaintiff did not sustain her burden of establishing a pretext simply due to the fact that her employer's investigation of her complaints was no thorough and that the standard "is not whether the employer's stated nondiscriminatory ground for the action of which [the] plaintiff is complaining is correct but whether it is the true ground of the employer's action"); *see also Celotex Corp.*, 477 U.S. at 325 (stating that the burden of the moving party may be discharged by showing the court the non-movant's lack of support for its case). Based on the above, no reasonable jury could find that a pretext existed as to Tropp's work hours being reduced or that a pretext existed as to the reasons for Ingalls' disciplinary actions against Tropp. Therefore, we grant Ingalls' motion for summary judgment on the ADEA Claim (Count III).

## IV. EPA Retaliation (Count II) and ADEA Retaliation (Count IV) Claims

In order to succeed on a retaliation claim under ADEA and EPA, Tropp must show that: "(1) [she] engaged in statutorily protected activity; (2) [she] suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse action." *Horwitz v. Board of Educ. of Avoca*

*School Dist. No. 37*, 260 F.3d 602, 612 (7th Cir. 2001). With claims of post-termination retaliatory actions, the allegedly retaliatory action must "have a nexus to employment [to be] actionable. . . ." *Veprinsky v. Fluor Daniel, Inc.*, 87 F.3d 881, 888 (7th Cir. 1996); *see Culver v. Gorman & Co.*, 416 F.3d 540, 545 (7th Cir. 2005)(stating standard). If Tropp succeeds in making a *prima facie* case, the burden shifts to Ingalls to prove that the same adverse employment action would have occurred. *Culver*, 416 F.3d at 546.

### A. EPA Retaliation Claim  (Count II)

Tropp argues that Ingalls' conduct constituted unlawful retaliation in violation of the EPA. Tropp contends that when she "complained about doing RN work, [she] was subjected to discipline and counseling regarding her performance of those duties, while at the same time her supervisor denied that Tropp was engaged in RN functions to the extent that Tropp's pay required adjustment." (Opp. 12). Tropp further claims that "[s]he complained that Joseph was trying to intimidate and harass her in an effort to force her resignation, and Joseph wrote her up, and reduced her work hours, and harassed her about completing her duties under the reduced work hours and increased work load until finally, Tropp was forced to resign, in the same manner that Tropp witnessed other older employees resign or otherwise be forced out." (Opp. 12). Ingalls argues that Tropp did not engage in statutorily protected activity.

In the instant action, Tropp argues she engaged in statutorily protected activity when "she repeatedly informed [Ingalls] in writing of a situation that she felt was discriminatory, in terms of the treatment that she was subjected to and in terms of the refusal to pay her equally for the RN duties she was performing." (Opp. 10). However, Tropp's contention is not supported by the record. Tropp did not complain to Ingalls that she was being discriminated against based upon her gender, but instead stated that she "wanted equal pay working as a nurse because [Tropp] assumed nursing duties in addition to the [CCM] duties in December 2002." (P Resp. D. SOF Part. 37); (D SOF Par. 56). Thus, although Tropp complained about her compensation for partially performing the duties of an RN as well as the duties of a CCM, Tropp did not engage in the statutorily protected activity of complaining that her pay rate was lower due to her gender. *See generally Tomanovich*, 457 F.3d at 663 (discussing how "filing an official complaint with an employer may constitute statutorily protected activity . . . the complaint must indicate the discrimination occurred because of sex, race, national origin, or some other protected class").

Ingalls argues that it is unreasonable that Tropp's supervisors "could have reasonably interpreted Tropp's complaints about her compensation as complaints of pay disparity based on her gender." (Mot. 14). Tropp cannot assume that Ingalls was aware of Tropp's beliefs when Tropp did not express such beliefs to Ingalls. Rather, Tropp complained to her supervisors about not being paid for her partial duties as an RN, not that male counterparts were being paid a higher wage. *See Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006)(discussing

how "filing an official complaint with an employer may constitute statutorily protected activity . . . the complaint must indicate the discrimination occurred because of sex, race, national origin, or some other protected class").  Additionally, ninety-four percent of the employees working as RNs were women and, as such, Tropp cannot conclusively assume without pointing to evidence supported in the record that Ingalls was aware that Tropp was complaining about a pay disparity that was due to her gender.  The undisputed evidence reflects that Ingalls was unaware of such contentions since Tropp's grievances did not include specific contentions of age discrimination.  Thus, there can be no causal link between the grievances, which were not protected activity, and an adverse employment action since Tropp did not complain of gender discrimination and Ingalls was unaware that Tropp's complaints were related to gender discrimination.  *Dey*, 28 F.3d at 1458.

Additionally, as noted above, Tropp has been unable to identify any similarly-situated males that did not complain about compensation but were treated more favorably.  The sole male that was similarly-situated to Tropp was Banks, who also received a reduction in his work hours due to the lower patient census.  Tropp is unable to establish that she suffered an adverse employment action.  Finally, Tropp has not presented evidence to show that a pretext existed as to Tropp's work hours being reduced or that a pretext existed as to the reasons for Ingalls' disciplinary actions against Tropp.  Therefore, based on the reasons stated above, we grant Ingalls' motion for summary judgment on the EPA Retaliation Claim (Count II).

B.  ADEA Retaliation Claim (Count IV)

Tropp also claims that Ingalls' conduct constituted unlawful retaliation in violation of the ADEA.  Tropp contends that "[a]s a result of the age based disparate treatment, the hostile work environment, and the imposition of unequal employment conditions, performance evaluations and assessments, counseling, warnings, discipline, compensation and work hours, [Tropp] was forced to leave her employment with [Ingalls] and [Tropp] was constructively discharged," (A. Compl. Par. 30).

In the instant action, Tropp argues that she engaged in statutorily protected activity when she informed her supervisors of the disparate treatment and discriminatory actions of Joseph.  Specifically, Tropp alleges that she "repeatedly informed [Ingalls] in writing of a situation that she felt was discriminatory, in terms of the treatment that she was subjected to and in terms of the refusal to pay her equally for the RN duties she was performing."  (Opp. 10).  However, Tropp's contention is not supported by the undisputed evidence.  Tropp filed a grievance, but never did she complain of discrimination based upon her age.  For example, on August 29, 2004, Tropp stated in her grievance that "[t]his is another incident where [Tropp] feel[s] [she] h[as] been discriminated against and is leading to a pretextual basis for termination."  (P. Resp. D SOF Par. 60).  However, such statements that complain of discrimination generally, without the context of age, cannot constitute a protected activity.  *See Tomanovich*, 457 F.3d at 663 (discussing how "filing an official complaint with an employer may constitute statutorily protected activity . . .

the complaint must indicate the discrimination occurred because of sex, race, national origin, or some other protected class").

Tropp also contends that "[i]t was reasonable for [her] to believe that the harassing treatment she experienced was related to her age, as she had previously witnessed a pattern of treatment against older nurses" since "Tropp's coworkers told [Tropp] that Joseph had written them up based on lies." (Opp. 10). However, as noted above, Tropp cannot assume that Ingalls was aware of Tropp's beliefs since Tropp did not express such beliefs to Ingalls. The undisputed evidence reflects that Ingalls was unaware of such contentions since Tropp's grievances did not include specific contentions of age discrimination. As such, there can be no causal link between the grievances, which were not protected activity, and an adverse employment action since Ingalls was unaware that Tropp's complaint was relating to age discrimination. *Dey*, 28 F.3d at 1458.

Tropp also suggests that there is a causal link between her filing of the IDHR Complaint and her constructive discharge. In October 2004, Tropp filed the IDHR Complaint, in which she alleged that Ingalls engaged in age discrimination. However, the reduction in Tropp's work hours had occurred in July 2004, prior to the time that she filed the IDHR Complaint. Further, Tropp has provided no set of facts to support her contention that any reprimands were related to the filing of the IDHR Complaint, rather than a discretionary employment action by Ingalls. The fact that Tropp disputes the facts underlying the reprimand actions and that she disagrees with the actions taken against her does not show that "there is a causal connection

between the protected activity and the adverse action." *Horwitz*, 260 F.3d at 612. Finally, Tropp's resignation did not occur until February 2005, approximately four months after she filed the IDHR Complaint. Tropp has failed to point to evidence in the record that establishes how such a long time frame between engaging in statutorily protected activity and her resignation establishes a causal link. *See Sauzek v. Exxon Coal USA, Inc.,* 202 F.3d 913, 918 (7th Cir. 2000)(stating that "[t]he mere fact that one event preceded another does nothing to prove that the first event caused the second"); *Oest*, 240 F.3d at 616 (finding that three months between the complaint of discrimination and the alleged retaliatory acts could not support an inference of retaliation); *Filipovich v. K & R Express Sys.*, *Inc.*, 176 F.3d 390, 399 (7th Cir. 1999)(holding that the length of four months between protected activity and challenged employment action negates any causal connection). Thus, Tropp did not suffer an adverse employment action after she filed the IDHR Complaint and therefore cannot claim that her resignation was due to retaliation.

Finally, as noted above, Tropp has been unable to identify any similarly-situated employees under the age of forty that did not complain about compensation but were treated more favorably after engaging in a protected activity. In addition, Tropp is unable to establish that she suffered an adverse employment action. Finally, Tropp has not presented evidence to show that a pretext existed as to Tropp's work hours being reduced or that a pretext existed as to the reasons for Ingalls' disciplinary actions against Tropp. Based on the above, no reasonable jury could find that Tropp engaged in the statutorily protected activity complaining about

discrimination based upon her age, that she suffered an adverse employment action, and that there is causal connection between the protected activity and the adverse action. Therefore, we grant Ingalls' motion for summary judgment on the ADEA Retaliation Claim (Count IV).

## CONCLUSION

Based on the foregoing analysis, we grant Tropp's motion to strike and grant Ingalls' motion for summary judgment in its entirety.

Samuel Der-Yeghiayan
United States District Court Judge

Dated: March 21, 2007